**HOULTON BAND OF MALISEET INDIANS, Plaintiff,**

v.

**MAINE HUMAN RIGHTS COMMISSION and State of Maine, Defendants.**

Civ. No. 96–0066–B.

United States District Court, D. Maine.

April 2, 1997.

---

Gregory P. Dorr, Farrell, Rosenblatt & Russell, Bangor, for Plaintiff.

Paul Stern, Assistant Attorney General, Augusta, for Defendants.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff, the Houlton Band of Maliseet Indians ("the Band"), requests declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 from Defendants' denial of the Band's Request for Administrative Dismissal of claims of unlawful employment discrimination against the Band that were filed with the Maine Human Rights Commission ("MHRC"). The Band also seeks declaratory relief from the Opinion of the Attorney General of the State of Maine upon which the MHRC based its denial.[1]

The Band contends in a three-count Complaint that It possesses an inherent sovereign and/or federally protected statutory right to adjudicate internal tribal matters without interference from the State of Maine, and that its employment decisions constitute internal tribal matters. Thus, the Band argues, the MHRC does not have jurisdiction to entertain the claims of employment discrimination against the Band that are presently before it and, therefore, should have granted the Band's Request for Administrative Dismissal of the claims (Count I). The Band further seeks a declaration that the MHRC's denial of the Band's Request and the Opinion of the Attorney General violate the Band's right to the equal protection of the laws under the Fourteenth Amendment (Count II), and further deprive the Band of rights, privileges, and immunities secured by the United States Constitution and the laws of the United States in violation of 42 U.S.C. § 1983 (Count III).[2] The Band also requests in each Count that the Court enter a permanent injunction

1. *See* Op. Me. Att'y. Gen., No. 84–23 (August 6, 1984).

2. The Band also included the United States Department of the Interior and the United States Bureau of Indian Affairs as parties-in-interest. The Court, however, dismissed these parties from the suit for lack of subject matter jurisdiction in an Order dated October 18, 1996.

preventing the MHRC from asserting jurisdiction over the present claims against the Band as well as over future complaints of unlawful employment discrimination against the Band. The Band filed a Motion for Summary Judgment as to Count I on November 14, 1996, and Defendants filed a Cross–Motion for Summary Judgment as to Count I on January 15, 1997. For the reasons set forth below, the Court holds that the Band is subject to the laws of the State of Maine and, therefore, the MHRC has jurisdiction over claims of unlawful employment discrimination against the Band. Accordingly, the Court denies the Band's Motion as to Count I and grants Defendants' Cross–Motion as to Count I.

## I. Summary Judgment

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A material fact is one that has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir. 1993). In this process, the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir., 1995).

## II. Background

In October 1995, the Band, a federally recognized band of Indians in Maine, fired ten of its employees for allegedly violating its tribal Personnel Policy and Procedures Manual. The Band contends that the employees participated in a civil disturbance, including taking over the tribal Administration Building, which allegedly caused the regularly conducted business of the Band to be disrupted. After being terminated, four of the former employees filed charges of retaliation or discrimination with the MHRC, claiming they were fired because of their race, in violation of the Maine Human Rights Act, 5 M.R.S.A. §§ 4551–4632, or for conduct that is protected by the Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831–840.[3] On December 20, 1995, the Band requested the MHRC to dis-

miss two of the complaints for lack of jurisdiction On January 2, 1996, the MHRC denied the Band's Request for Administrative Dismissal, basing its decision on an Opinion of the Attorney General of the State of Maine dated August 6, 1994. The Attorney General had expressly stated that the MHRC has jurisdiction over claims of unlawful employment discrimination against the Band. It is the MHRC's denial of the Band's Request for Administrative Dismissal and the Opinion of the Attorney General of the State of Maine that are the subjects of this suit.

## III. The Maine Implementing Act and the Maine Indian Claims Settlement Act

■ The Supreme Court has recognized that although the sovereign powers of Indian tribes are broad, "[t]he sovereignty that the Indian tribes retain is of a unique and limited character." *United States v. Wheeler,* 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978). The Court explained:

> [Indian tribes' sovereignty] exists only at the sufferance of Congress and is subject to complete defeasance. But until Congress acts, the tribes retain their existing sovereign powers. In sum, Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status.

*Id.* In other words, Indian tribes retain their sovereignty solely at the will of Congress. "Congress has plenary authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 56, 98 S.Ct. 1670, 1676, 56 L.Ed.2d 106 (1978). It is upon this backdrop that the Court examines the extent to which Congress has limited the Band's otherwise sovereign rights, and, ultimately, if the Band retains the right to be free from state interference with claims of unlawful employment discrimination.

■ In 1979, the Passamaquoddy Tribe and the Penobscot Nation entered into a settlement agreement with the State of

---

**3.** The Court notes that at the time of this Order, there are at least eight such charges before the

MHRC against the Band for unlawful employment discrimination.

Maine regarding land claims disputes ("the Maine Implementing Act" or "the Agreement"). *See* 30 M.R.S.A. §§ 6201–6214. In addition to settling the land claims disputes, the Agreement also sets forth the legal status of the Passamaquoddy Tribe, the Penobscot Nation, and the Band with regard to the State. For instance, the Agreement provides that "[t]he Houlton Band of Maliseet Indians and *its lands will be wholly subject to the* laws of the State." *Id.* § 6202. The Agreement also states:

> Except as otherwise provided in this Act, all Indians, Indian nations, and tribes and bands of Indians in the State ... shall be subject to the laws of the State and to the civil and criminal jurisdiction of the courts of the State to the same extent as any other person or lands or other natural resources therein.

*Id.* § 6204. As this section makes explicit, the Band is subject to the laws of the State of Maine unless there is an exemption elsewhere in the Agreement. There is no exemption for the Band from coverage under the Maine Human Rights Act.

The Agreement, moreover, specifically provides that the internal tribal matters of the Passamaquoddy Tribe and the Penobscot Nation "shall not be subject to regulation by the State." *Id.* § 6206(1).[4] The Band, however, is glaringly absent from this exemption. Moreover, the Agreement declares:

> The Houlton Band of Maliseet Indians shall not exercise nor enjoy the powers, privileges and immunities of a municipality *nor exercise civil or criminal jurisdiction within their lands, prior to the enactment of additional legislation specifically authorizing the exercise of those governmental powers.*

*Id.* § 6206–A (emphasis added). There has not been additional legislation that permits the Band to exercise civil or criminal jurisdiction within its lands.

Only Congress has the plenary authority to limit the sovereign rights of Indian groups. Accordingly, in 1980, Congress passed the Maine Indian Cairns Settlement Act (also referred to as "the Act"). *See* 25 U.S.C. §§ 1721–1735. The Act ratified the Agreement between the Penobscot Nation, the Passamaquoddy Tribe and the State of Maine, and confirmed "that all other Indians, Indian nations and tribes and bands of Indians now or hereafter existing or recognized in the State of Maine are and shall be subject to all laws of the State of Maine, as provided herein." *Id.* § 1721(b)(3), (4). Most significantly, the Act states:

> Except as provided in section 1727(e) and section 1724(d)(4) of this title, all Indians, Indian nations, or tribes or bands of Indians in the State of Maine, *other than the Passamaquoddy Tribe, the Penobscot Nation, and their members* .... shall be subject to the civil and criminal jurisdiction of the State, the laws of the State, and the civil and criminal jurisdiction of the courts of the State, to the same extent as any other person or land therein.

*Id.* § 1725(a) (emphasis added). Section 1727(e) concerns the applicability of the Indian Child Welfare Act, and § 1724(d)(4) pertains to the possibility of future agreements between the Band and the State of Maine permitting the acquisition of land by the United States in trust for the Band. *Id.* §§ 1727(e), 1724(d)(4). Section 1724(d)(4) provides, however, that "such agreement shall not include any other provisions regarding the enforcement or application of the laws of the State of Maine." *Id.* § 1724(d)(4). Neither § 1727(e) nor § 1724(d)(4), therefore, exempts the Band from "internal tribal matters" or from the civil law of the State that is within the jurisdiction of the MHRC.

The Act further states that the Passamaquoddy Tribe, the Penobscot Nation, and the Band may sue and be sued in the courts of the State of Maine to the same extent as any other person in the State; however, "the Passamaquoddy Tribe, the Penobscot Nation, and their officers and employees shall be immune from suit to the extent provided in

---

**4.** Internal tribal matters include the following: "membership in the respective tribe or nation, the right to reside within the respective Indian territories, tribal organization, tribal government, tribal elections and the use or disposition of settlement fund income...." 30 M.R.S.A. § 6206(1).

the Maine Implementing Act." *Id.* § 1725(d)(1). It is noteworthy that § 1725 does not create a similar exemption for the Band. The First Circuit has held: "When, as now, Congress has unambiguously expressed its intent through its choice of statutory language, courts must read the relevant laws according to their unvarnished meaning, without any judicial embroidery." *Passamaquoddy Tribe v. State of Maine,* 75 F.3d 784, 793 (1st Cir.1996). It is indeed clear from the statutory language of the Maine Implementing Act and the Maine Indian Claims Settlement Act that the Band is subject to the civil laws of the State and, therefore, to the jurisdiction of the MHRC for claims of unlawful employment discrimination.

The Maine Law Court arrived at a similar conclusion in *Houlton Band of Maliseet Indians v. Boyce,* 688 A.2d 908 (Me.1997). In *Boyce,* the defendants appealed from an order of the superior court granting the Band's Motion for Summary Judgment. Specifically, the defendants contended that the court lacked subject matter jurisdiction to enjoin the defendants from interfering with tribal business and to order Katahdin Trust Co., the Band's bank, to disburse funds to the tribal council without liability.

The defendants in *Boyce,* members of the six-person tribal council of the Band, had taken control of the tribal administration building after a dispute arose among tribal council members, and refused to allow other council members inside the building. The Katahdin Trust Co., the Band's bank, froze the Band's account. Subsequently, members of the Band's general membership voted to remove the defendants from the tribal council and elected replacements to serve in the defendants' place until a proper election could be conducted in accordance with the Band's election ordinance. The Band filed a Complaint in superior court, requesting that the court declare that: 1) the defendants were properly removed from their positions as tribal council members; 2) the temporary council members were duly elected; and 3) the new tribal council could proceed with business. The Band also requested that the court enjoin the defendants from preventing entry into the administrative building and order the Katahdin Trust Co. to recognize the authority of the new tribal council and release the Band's finds. The court declined to review the legitimacy of the tribal members' election, but issued a permanent injunction that prohibited the defendants from interfering with tribal administrative functions and permitted the Katahdin Trust Co. to release the Band's funds without liability.

The Law Court noted that the superior court declined to determine the legitimacy of the Band's election of tribal council members, and held that the court did have jurisdiction to address "the immediate crises created by the defendants' refusal to permit administrative functions of the Band to continue and Katahdin Trust's refusal to disburse the Band's funds." *Id.* at 911. Most importantly, the Law Court explained that "[b]oth the Maine Indian Claims Settlement Act and the state's implementing act make clear that members of the Band are subject to state laws." *Id.* at 911. Thus, while the Law Court declined to address the issue of whether the Band has the sovereign right to determine matters of self-government, it held that the superior court still had jurisdiction to entertain claims against members of the Band that affected state laws.

The Band here argues that *Boyce* is not determinative because the Law Court did not reach the issue of whether the Band possesses the sovereign right to determine matters of self-government. The Band asserts that it is not now claiming that it is exempt from all state laws, rather, it argues that it is exempt from those state laws that interfere with its right to self-government and self-determination and that the claims of unlawful employment discrimination against the Band that are presently before the MHRC are matters that relate to the Band's self-government and self-determination. The Band's argument is seriously flawed because it misstates the nature of the complaints before the MHRC. The complaints do not require determination of what form of government the Band chooses, nor do they require that the MHRC resolve the legitimacy of a tribal election or other such "political" dispute. Rather, the MHRC is called upon solely to decide if the Band unlawfully discriminated against the

complainants in their employment in violation of the Maine Human Rights Act and the Whistleblowers' Protection Act. The Band will have the opportunity to argue that it did not fire complainants because of their race or for being "whistleblowers;" indeed, it presently contends that the complainants committed a civil disturbance in violation of the Band's Personnel Policy and Procedures Manual, and it was for this reason alone that they were fired. Nevertheless, the complainants contend that they were fired because of their race and because they reported illegal activity. Such employment action is prohibited by Maine law. Since the Band is subject to the civil laws of the state, it may not engage in unlawful employment discrimination. Accordingly, the MHRC has jurisdiction to review the claims of unlawful employment discrimination against the Band that are before it. Further, even if the MHRC's ultimate decision has an incidental effect on the Band's government, the Band is nonetheless subject to its jurisdiction. See *Boyce*, at 911 ("Any incidental recognition of the Band's election dispute does not invalidate the court's order.").

The Band also relies on *Mitchell v. Passamaquoddy Tribe* No. 84–0073 (D. Me. Jan. 9, 1990 (Recommended Disposition of the Magistrate), *aff'd.* (D.Me. Feb. 1, 1990) (Carter, C.J.), for support of its position that the MHRC does not have jurisdiction over the claims against the Band. The Band contends that *Mitchell* holds that the hiring and firing of its employees is an integral part of tribal government and, as such, is an "internal tribal matter" that is free from state interference. The Band's reliance on Mitchell is misplaced. The Court notes that *Mitchell* involved a claim of a former employee of the Passamaquoddy Tribe under 42 U.S.C, § 1983. The "internal tribal matters" of the Passamaquoddy Tribe, however, are not subject to state regulation. *See* 30 M.R.S.A. § 6206(1). There is no such exemption for the Band. As stated by the Maine Implementing Act and ratified by the Maine Indian Claims Settlement Act, all Indian groups within the State of Maine shall be subject to the civil and criminal jurisdiction of the State except as otherwise indicated. *See* 30 M.R.S.A. § 6204; 25 U.S.C. §§ 1721(b)(3)-

(4), 1725(a). Therefore, even if the hiring and firing of employees is an "internal tribal matter," a matter that the Court does not address here, the Band is still subject to the civil and criminal jurisdiction of the State if such hiring and firing implicates state law, Since the complainants before the MHRC allege they were fired in violation of state law, the Band is subject to the jurisdiction of the MHRC.

The Band also contends that 25 U.S.C. § 1726 supports the Band's sovereign right to control its "internal tribal matters." Section 1726(a) states:

> The Passamaquoddy Tribe, the Penobscot Nation, and the Houlton Band of Maliseet Indians may each organize for its common welfare and adopt an appropriate instrument in writing to govern the affairs of the tribe, nation or band when each is acting in its governmental capacity.

*Id.* It is noteworthy, however, that § 1726 also provides the following caveat: "Such instrument and any amendments thereto must be consistent with the terms of this subchapter and the Maine Implementing Act." *Id.* Therefore, although the Band may organize for its common welfare and adopt a governing instrument for its members, it must do so in accordance with the terms of the Maine Implementing Act and the Maine Indian Claims Settlement Act. As explained above, the terms of the Maine Indian Claims Settlement Act and the Maine Implementing Act provide that the Band is subject to the laws of the State of Maine. There is nothing in § 1726 that holds to the contrary. Additionally, § 6206(1) of the Maine Implementing Act exempts only the Passamaquoddy Tribe and the Penobscot Nation from the laws of the State regarding "internal tribal matters." The Band is afforded no such exemption. Section 6206(1) was ratified by Congress in 25 U.S.C. § 1721. Thus Congress's intent is clear The Band is not exempt from State law affecting "internal tribal matters." The Court does not address the issue of whether the State may exercise jurisdiction over the Band's "political" decisions, such as what form of government it chooses or how it conducts its elections of tribal council members. Yet to the extent that the

Band's actions affect and implicate state law, the Band is subject to the civil and criminal jurisdiction of the State.

■ The Band next contends that since Title VII of the 1964 Civil Rights Act specifically states that Indian tribes are excluded from the definition of "employer," *see* 42 U.S.C. § 2000e(b), the Band may not be subject to civil suits based on alleged violations of Title VII or its state counterpart, the Maine Human Rights Act. Fatal to the Band's claim, however, is 25 U.S.C. § 1725(h), which states:

> Except as otherwise provided in this subchapter, the laws and regulations of the United States which are generally applicable to Indians, Indian nations, or tribes or bands of Indians ... shall be applicable in the State of Maine, except that no law or regulation of the United States (1) which accords or relates to a special status or right of or to any Indian, Indian nation, tribe or band of Indians ..., and also (2) which affects or preempts the civil, criminal, or regulatory jurisdiction of the State of Maine, including, without limitation, laws of the State relating to land use or environmental matters, shall apply within the State.

*Id.* As made clear by this statute, no federal law that grants a special status to an Indian group and preempts the civil law of the State of Maine shall apply within the State. Thus, the Title VII exemption of Indians from its definition of "employer" does not apply to Indians residing in the State of Maine. The Band argues, however, that since the Title VII exemption of Indians became law before § 1725(h) was passed, § 1725(h) cannot apply to, and preempt, the Title VII exemption because such an application would be retroactive and result in manifest injustice. The judicial concern regarding retroactive application of statutes, however, does not apply in this instance. What is important here is that the acts complainants allege the Band committed occurred after Congress passed the Maine Indian Claims Settlement Act. The Band, therefore, had notice that all other federal laws that accord special status to Indian groups and affect or preempt the civil laws of the State of Maine shall not apply.

The Band contends in the alternative that since the Title VII exemption does not accord a special right or status to the Band alone, but applies to all Indians in Maine, § 1725(h) does not apply. The Court rejects this argument. Simply because § 1725(h) states that any federal law that accords "a special status or right of or to any Indian" that is in conflict with a law in the State of Maine shall not apply does not mean that a law that accords a special status to all Indians, such as Title VII's exemption, shall apply. The Band is seeking to enforce a federal law that accords a special right to Indians (the Title VII exemption) but is in conflict with the law in the State of Maine. Section 1725(h) does not permit the Band to seek refuge in such a law. Finally, the Band asserts that Title VII's exemption of Indians from its definition of "employer" is merely an interpretation, not a preemption, of the Maine Human Rights Act. Although it is true that courts look to federal law for guidance in analyzing the Maine Human Rights Act, *see Bowen v. Department of Human Servs.*, 606 A.2d 1051, 1053 (Me.1992) (deferring to federal analysis of Title VII when examining the Maine Human Rights Act), they do not alter the substantive law of the Maine Human Rights Act if it differs from Title VII. Instead, they merely rely on federal courts' analyses of Title VII claims (such as the *McDonnell Douglas* test) when analyzing claims arising under the Maine Human Rights Act. Accordingly, since Indians are not exempt from the definition of "employer" under the Maine Human Rights Act, *see* 5 M.R.S.A. § 4553(4), the Band is subject to the MHRC's jurisdiction.

■ Finally, the Band relies on purported views expressed by the Department of Interior and the Bureau of Indian Affairs as support for its position that it is not subject to the jurisdiction of the MHRC. The Court declines to analyze the opinions of the Department or the Bureau. The express will of Congress, as codified in the Maine Indian Claims Settlement Act, controls the present issue. As explained above, "When ... Congress has unambiguously expressed its intent through its choice of statutory language, courts must read the relevant laws according

**456**

to their unvarnished meaning...." *Passamaquoddy Tribe v. State of Maine.* 75 F.3d 784, 793 (1st Cir.1996). While it is true that "ambiguities in legislation affecting retained tribal sovereignty are to be construed in favor of the Indians," *Washington v. Yakima Indian Nation,* 439 U.S. 463, 484, 99 S.Ct. 740, 753, 58 L.Ed.2d 740 (1979), Congress has been absolutely clear regarding the legal status of the Band. It is unequivocally subject to the civil and criminal laws of the State of Maine, including the Maine Human Rights Act and the Whistleblowers' Protection Act.

### IV. Conclusion

The Band is subject to the civil and criminal laws of the State of Maine. It is, therefore, subject to the jurisdiction of the MHRC. Accordingly, the MHRC's denial of the Band's Request for Administrative Dismissal of claims brought against the Band for unlawful employment discrimination, and the Opinion of the Attorney General of the State of Maine upon which the MHRC's decision was based, were not error. The Court denies the Band's Motion for Summary Judgment as to Count I and grants the MHRC's and the State of Maine's Motion for Summary Judgment as to Count I.

*SO ORDERED.*