**Judith E. BOUDMAN, Plaintiff,**

v.

**AROOSTOOK BAND OF MICMAC INDIANS, Defendant.**

**No. Civ. 98–174–B.**

United States District Court, D. Maine.

June 16, 1999.

---

Wayne P. Doane, Cuddy & Lanham, Bangor, ME, for plaintiff.

Michael Carpenter, Houlton, ME, for defendant.

## ORDER AND MEMORANDUM
## OF DECISION

BRODY, District Judge.

Plaintiff Judith E. Boudman ("Plaintiff") was employed by Defendant Aroostook Band of Micmac Indians ("Defendant") as an Assistant Health Director/Health Planner/Environmental Health Director. She has filed a Complaint asserting that Defendant terminated her because of her race and national origin in violation of the Maine Human Rights Act, Me.Rev.Stat. Ann. tit. 5, §§ 4551–4632 (Count I) and 42 U.S.C. § 1983 (Count II), that her termination constituted a breach of contract (Count III), and that Defendant denied her procedural due process in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 6–A of the Maine Constitution (Count IV).

Before the Court is Defendant's Motion to Dismiss Counts I and II for lack of jurisdiction and Plaintiff's Motion to Amend the Complaint. For the reasons discussed below, the Motion to Dismiss is DENIED, the Motion to Amend the Complaint is GRANTED IN PART and DENIED IN PART, and Count IV is DISMISSED.

## I. BACKGROUND

The pleadings in this case offer scant history. Plaintiff worked for Defendant as an Assistant Health Director/Health Planner/Environmental Health Director. She is white and is not a member of any Indian tribe. Her employment record with Defendant was satisfactory and she received a special award recognizing her service to Eastern tribes.

On August 21, 1996, Defendant informed Plaintiff that she was being terminated because she had violated several internal policies. Plaintiff filed a grievance letter with Defendant pursuant to its personnel policies, but Defendant never acknowledged or responded to the grievance letter.

Plaintiff claims the true reason for her firing was her race and national origin. In support of this assertion, she alleges that one member of the Tribal Council who played a role in her termination had publicly voiced an intention to employ only Micmacs to the exclusion of whites. She also alleges that this same Tribal Council member prepared a list of persons he intended to fire, most of whom were non-Micmac. Finally, Plaintiff alleges that several Tribal Council members referred to her as the "white bitch." As a general matter, Plaintiff asserts that Defendant treated its white employees less favorably than its Micmac employees.

On August 21, 1998, Plaintiff filed a four-Count Complaint against Defendant in this court. She asserts that she was fired because of her race and national origin in violation of both the Maine Human Rights Act ("the MHRA"), Me.Rev.Stat. Ann. tit. 5, §§ 4551–4632 (Count I) and 42 U.S.C. § 1983 ("Section 1983") (Count II). Plaintiff also claims that her termination amounted to a breach of contract (Count III) and a denial of the procedural due process rights guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 6–A of the Maine Constitution (Count IV). She seeks back pay, front pay, compensatory damages, civil penal damages, attorney's fees, interest, and costs.

On March 23, 1999, Defendant moved to dismiss Counts I and II for lack of subject matter jurisdiction. Plaintiff opposed the Motion to Dismiss and also moved to Amend her Complaint. Defendant did not submit a Reply to Plaintiff's Response to the Motion to Dismiss.

## III. DISCUSSION

### A. Defendant's Motion to Dismiss

Defendant argues that this Court lacks jurisdiction over Plaintiff's MHRA and Section 1983 claims based on *Penobscot Nation v. Fellencer*, 164 F.3d 706 (1st Cir.1999), *petition for cert. filed*, 67 U.S.L.W. 3654 (April 19, 1999). Plaintiff responds that *Fellencer* does not support this conclusion. The Court agrees.

As Defendant points out, the facts of *Fellencer* indeed are very similar to those presented in this case. In *Fellencer*, the Penobscot Nation had terminated Fellencer, a white non-Indian, from her job as a Community Health Nurse/Diabetes Program Coordinator. *See Fellencer*, 164 F.3d at 707. Fellencer filed suit asserting, among other things, that she was discharged because of her race and national origin in violation of the MHRA. *See id.*

As Plaintiff notes, however, it is with these few facts that the similarities between *Fellencer* and this case end. The sole issue before the Court in *Fellencer* was whether the Penobscot Nation's employment of Fellencer was an "internal tribal matter" within the meaning of Maine's Act to Implement the Maine Indian Claims Settlement Act ("the Implementing Act"), Me.Rev.Stat.Ann. tit. 30, §§ 6201–6214, and the Maine Indian Claims Settlement Act ("the Federal Act"), 25 U.S.C. §§ 1721–35. *See id.* at 708. If so, under the terms of those two statutes, Fellencer was precluded from bringing an MHRA claim against the Penobscot Nation. *See id.* The First Circuit held that Fellencer's employment was an "internal tribal matter" and therefore the MHRA claim she had filed in state court was barred. *See id.* at 712–13.

Defendant urges the Court to find that its decisions relating to Plaintiff's employment are "internal tribal matters" and therefore immunized from suit under *Fellencer*. This argument, however, mistakenly assumes that Defendant and the Penobscot Nation are similarly situated with respect to the applicability of state law. As will be demonstrated below, statutory law in this area reveals that unlike the Penobscot Nation, Defendant may not invoke an "internal tribal matters" exception to application of state law.

Defendant's legal relationship with the state can only be understood upon examination of the law governing several of the Indian tribes in the state of Maine. In 1979, the Passamaquoddy Tribe ("the Passamaquoddy"), the Penobscot Nation ("the Penobscot"), and the Houlton Band of Maliseet Indians ("the Maliseet Indians") entered into a settlement agreement with the State of Maine concerning land claims disputes. This settlement was memorialized in the Implementing Act and the Federal Act. These two statutes make clear that, in the wake of the aforementioned settlement, the Maliseet Indians enjoy a different legal relationship with the State than that accorded the Passamaquoddy and the Penobscot.

While Defendant was not a party to the settlement giving rise to the Implementing Act and the Federal Act, approximately a decade after enactment of these laws, Defendant initiated its own claims against the state of Maine. As a result, Maine enacted the Micmac Settlement Act ("Micmac Settlement Act"), Me.Rev.Stat.Ann. tit. 30, §§ 7201–07. This state act was ratified by Congress in the Aroostook Band of Micmacs Settlement Act ("Federal Micmacs Act"), set out as a note under 25 U.S.C. § 1721. The Federal Micmacs Act explains that Defendant is to be treated like the Maliseet Indians:

The Band was not referred to in the [Federal Act] because historical documentation of the Micmac presence in Maine was not available at that time.... The Aroostook Band of Micmacs, in both its history and presence in Maine, is similar to the Houlton Band of Maliseet Indians and would have received similar treatment under the [Federal Act] if the information available today had been available to Congress and the parties at

that time.... It is now fair and just to afford the Aroostook Band of Micmacs the same settlement provided to the Houlton Band of Maliseet Indians for the settlement of that Band's claims, to the extent they would have benefitted from inclusion in the [Federal Act].

Pub.L. No. 102–171, § 2, 105 Stat. 1143 (1991). In the Court's view, Congress was unequivocal in its intention to accord Defendant the same legal treatment afforded the Maliseet Indians in the Implementing Act and the Federal Act. Bearing this in mind, the Court now turns to the relevant provisions of these two statutes.

The Federal Act indicates that, at least facially, the Passamaquoddy, the Penobscot, and the Maliseet Indians are similarly situated with respect to the application of federal law. It provides that all federal law generally applicable to Indians will apply to Indians in the state of Maine with limited exceptions. *See* 25 U.S.C. § 1725(h) (1994). With respect to state law, however, the Maliseet Indians occupy a different position than the Passamaquoddy and the Penobscot. While the Passamaquoddy and the Penobscot enjoy some immunity from state law, the Maliseet Indians are unconditionally subject to state law. An introductory provision of the Implementing Act explains:

> The foregoing agreement between the Indian claimants and the State ... represents a good faith effort by the Indian claimants and the State to achieve a just and fair resolution of their disagreement over jurisdiction on the present Passamaquoddy and Penobscot Indian reservations and in the claimed areas. To that end, *the Passamaquoddy Tribe and the Penobscot Nation have agreed to adopt the laws of the State as their own to the extent provided in this Act. The Houlton Band of Maliseet Indians and its lands will be wholly subject to the laws of the State.*

Me.Rev.Stat.Ann. tit. 30, § 6202 (1996) (emphasis added). The Implementing Act goes on to state that "[e]xcept as otherwise provided in this Act, all Indians, Indian nations, and tribes and bands of Indians in the State ... shall be subject to the laws of the State and to the civil and criminal jurisdiction of the courts of the State to the same extent as any other person ..." Me.Rev.Stat.Ann. tit. 30, § 6204 (1996).

In Sections 6206 and 6206–A, the Implementing Act clarifies the exception extended to the Passamaquoddy and the Penobscot. Section 6206 explains that, when certain issues are implicated, the Passamaquoddy and the Penobscot will *not* be subject to state law:

> Except as otherwise provided in this Act, *the Passamaquoddy Tribe and the Penobscot Nation,* within their respective Indian territories, shall have, exercise and enjoy all the rights, privileges, powers and immunities, including, but without limitation, the power to enact ordinances and collect taxes, and *shall be subject to all the duties, obligations, liabilities and limitations of a municipality of and subject to the laws of the State, provided, however, that internal tribal matters,* including membership in the respective tribe or nation, the right to reside within the respective Indian territories, tribal organization, tribal government, tribal elections and the use or disposition of settlement fund income *shall not be subject to regulation by the State.*

Me.Rev.Stat.Ann. tit. 30, § 6206(1) (1996). The Federal Act affirms this provision. *See* 25 U.S.C. § 1725(b)(1) (1994) ("The Passamaquoddy Tribe [and] the Penobscot Nation ... shall be subject to the jurisdiction of the State of Maine to the extent ... provided in the Maine Implementing Act.").

In contrast to the status of the Passamaquoddy and the Penobscot, the Implementing Act affords the Maliseet Indians no "internal tribal matters" exception to application of state law. The purposefulness of this omission is reflected in the Federal Act, which states:

[A]ll Indians, Indian nations, or tribes or bands of Indians in the State of Maine, *other than the Passamaquoddy Tribe, the Penobscot Nation, and their members* ... shall be subject to the civil and criminal jurisdiction of the State, the laws of the state, and the civil and criminal jurisdiction of the courts of the State, to the same extent as any other person or land therein.

25 U.S.C. § 1725(a) (1994) (emphasis added).

▪ As these provisions make clear, the Maliseet Indians are not subject to the "internal tribal matters" exception enjoyed by the Passamaquoddy and the Penobscot.[1] Since Congress has indicated that Defendant is to be treated like the Maliseet Indians, the Court concludes that, like the Maliseet Indians, Defendant cannot claim immunity from suit based on an asserted "internal tribal matters" exception, which extends only to the Passamaquoddy and the Penobscot. *Fellencer,* which dealt solely with the Penobscot and the "internal tribal matters" exception that was clearly applicable in that case, is simply inapposite.

Having concluded that *Fellencer* does not affect this Court's subject matter jurisdiction over Counts I and II, and given that Defendant's Motion is based entirely on *Fellencer,* the Court denies the Motion to Dismiss.[2]

1. This Court previously reviewed these statutory provisions and held that the Maliseet Indians are subject to the jurisdiction of the Maine Human Rights Commission for claims of violations of the MHRA. *See Houlton Band of Maliseet Indians v. Maine Human Rights Comm'n,* 960 F.Supp. 449, 453 (D.Me.1997).

2. Defendant also suggested, without elaboration, that this Court lacks jurisdiction over Plaintiff's Section 1983 claim based on *Fellencer. Fellencer,* however, solely addressed the viability of an MHRA claim against the Penobscot, and not the viability of a Section 1983 claim against the Penobscot or any other Indian tribe in Maine.

## B. Plaintiff's Motion to Amend

### 1. Applicable Standard

Plaintiff proposes to amend her Complaint by adding causes of action under Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, and under the Indian Civil Rights Act ("ICRA"), 25 U.S.C. §§ 1301–03. Leave to amend a complaint may be granted "when justice so requires." Fed.R.Civ.P. 15(a). Defendant argues that since Plaintiff filed her Motion to Amend after its Motion to Dismiss was submitted, the Court should consider the Motion to Amend an attempt to alter the shape of the case in order to defeat the Motion to Dismiss and should require Plaintiff to show that the proposed amendments are supported by substantial and convincing evidence. Plaintiff's Motion to Amend, however, cannot be construed as an attempt to survive the Motion to Dismiss, as the Motion to Dismiss was premised on an erroneous assertion of lack of subject matter jurisdiction. As a result the Court rejects the higher standard proposed by Defendant.

### 2. Title VII

Plaintiff argues that Defendant is not exempt from Title VII according to this Court's decision in *Houlton Band of Maliseet Indians v. Maine Human Rights Comm'n,* 960 F.Supp. 449 (D.Me.1997). Defendant, in contrast, contends that *Houlton Band* did not dispose of this issue and that the plain language of Title VII,

While it is true that when the Passamaquoddy or the Penobscot act with respect to "internal tribal matters," they are not liable under Section 1983 because they have not acted "under color of state law," *see Akins v. Penobscot Nation,* 130 F.3d 482, 485 (1st Cir. 1997), this particular analysis does not apply to Defendant because it does not enjoy an "internal tribal matters" exemption. To the extent there is a question as to Defendant's status as a state actor for purposes of the Section 1983 claim, this issue was not raised by Defendant in the Motion to Dismiss and should be addressed at the summary judgment stage.

which exempts Indian tribes from its reach, should be respected. This question is easily resolved.

In *Shannon v. Houlton Band of Maliseet Indians*, 54 F.Supp.2d 35 (D.Me. 1999), this Court determined that the Maliseet Indians are subject to Title VII's exemption of Indian tribes from its reach. In light of the statutory evidence, discussed above, that Defendant is to be treated like the Maliseet Indians, the Court concludes that Defendant also is exempt from Title VII. Where a complaint as amended could not survive a motion to dismiss, then the motion to amend is to be denied as futile. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (motion to dismiss for failure to state a claim); *Schock v. United States*, 21 F.Supp.2d 115, 124 (D.R.I.1998) (motion to dismiss for lack of jurisdiction). Since amending the Complaint to add a Title VII claim would be futile, Plaintiff's Motion to Amend with respect to the Title VII claim is denied.

### 3. ICRA

Plaintiff observes that Count IV of her Complaint, as currently configured, cannot stand because the Fifth and Fourteenth Amendment of the United States Constitution may not be invoked against Indian tribes. *See Talton v. Mayes*, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896) (Fifth Amendment); *Barta v. Oglala Sioux Tribe*, 259 F.2d 553 (8th Cir.1958), *cert. denied*, 358 U.S. 932, 79 S.Ct. 320, 3

L.Ed.2d 304 (1959) (Fourteenth Amendment). The Court therefore dismisses, sua sponte, Count IV. *See Boschette v. Bach*, 925 F.Supp. 100, 101 (D.P.R.1996) (noting court may dismiss sua sponte where no cause of action is stated). Plaintiff proposes to amend her Complaint to add a claim under Section 1302(8) of the ICRA, which provides that "[no Indian tribe in exercising powers of self-government shall ... deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.]" 25 U.S.C. § 1302(8) (1994). Cognizant that *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), bars federal court jurisdiction over ICRA claims other than habeas corpus petitions, Plaintiff asserts that she is subject to an arguable exception to the *Santa Clara* rule.[3]

Defendant briefly responds that merely because Plaintiff erred in asserting claims under the Fifth and Fourteenth Amendments in her original Complaint does not mean that she should be permitted to cure her Complaint by amending it now. It urges the Court to block this proposed amendment based on a vague assertion of "undue delay" on the part of Plaintiff, and reassures the Court that denying the Motion to Amend would not be an abuse of discretion. In the absence of a specific explanation as why the delay is "undue," the Court declines Defendant's invitation to bar this amendment.[4] Plaintiff's Motion to Amend the Complaint to add the ICRA claim is granted.

---

**3.** Plaintiff observes that the Tenth Circuit has carved out a narrow exception to *Santa Clara* where a plaintiff demonstrates that (i) the dispute involves a non-Indian party, (ii) a tribal forum for adjudication of ICRA claims is not available, and (iii) the dispute involves an issue falling outside internal tribal affairs. *See, Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes*, 623 F.2d 682 (10th Cir. 1980). She alleges that she falls under this exception because she is a non-Indian, Defendant ignored her repeated attempts to utilize the tribal forum available for adjudication of ICRA claims, and the case involves an issue not implicating internal tribal affairs. The

First Circuit has not addressed the viability of such an exception to *Santa Clara*.

**4.** In its Response, Defendant offered no substantive arguments opposing the addition of the ICRA claim. The Court hesitates to rule on whether *Santa Clara* leaves room for any exceptions to its broad rule, since neither party briefed the issue (Plaintiff merely points out that one Circuit, the Tenth Circuit, recognized such an exception in a single case) and the as yet unelaborated facts of this case likely will be relevant to a determination on that question.

### III. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss Counts I and II is DENIED, Plaintiff's Motion to Amend the Complaint to add a Title VII claim is DENIED, Plaintiff's Motion to Amend the Complaint to add an ICRA claim is GRANTED, and Count IV is DISMISSED.

*SO ORDERED.*